23  309,<br>125  130,

NATHANIEL F. WALKER, plaintiff in error, *vs.* ROBERT PERRYMAN, and others, defendants in error.

[1.] There is no such privity between the co-heirs or distributees of an estate, as will make a judgment against a part, a bar to a suit in favor of the rest.·

In a proceeding for the probate of a will, the executor is not the representative of the heirs at law. Neither is he the *pars principalis* of the legatees named in the will, unless their interest as legatees is paramount to their interest as heirs.

[2.] When application is made to the Court for a citation to issue, calling on the executor to prove the will in solemn form, a *prima facie* case must be made, supported by the affidavit of the party.

[3.] It cannot be inferred from the publicity of a suit, that persons interested in the subject matter of the litigation necessarily heard of it.

When parties in interest have not been heard as to their rights, will the Courts undertake to decide, without affording them an opportunity of being heard, that substantial justice has been done them? *Quere.*

[4.] Relatives have a right to aid and abet one another in the prosecution or defence of their rights in a Court of justice. And the only question is, whether the suit be authorized by the nominal parties? If it be not, it will be arrested; otherwise, no inquiry is admissible respecting it.

[5.] That the mere knowledge of the pendency of litigation in the subject matter of which a person has an interest, will bind him by the judgment as a privy, we are not prepared to admit.

An earnest appeal to the Legislature to make provision by law for the probate of wills, so that the first proceeding shall be final.

Rule nisi and caveat, in Upson Superior Court. Tried before Judge CABINESS, at May Term, 1857.

The last will and testament of James Walker, deceased, had been admitted to probate, in solemn form, by the Ordinary of Upson county, and upon appeal from said judgment to the Superior Court, a special jury found for the will.

At January Term, 1851, the Court of Ordinary passed a final order, that the said will be admitted to record, and that letters testamentary issue to the executor, Nathaniel F. Walker.

At the July Term, 1852, of the Court of Ordinary of said county, Robert Perryman, Freeman Perryman, and Amos Ward and wife, Mary B. Ward, formerly Perryman, applied for a *rule nisi* against said executor, requiring him to show cause why said will should not be proven in solemn form. The petitioners alledged that they were some of the heirs at law of said James Walker, deceased, and were not parties or privies to the former proceedings and judgment establishing said will, nor were they cited or notified to appear and contest the validity of the same. They, therefore, pray to be allowed to show that said instrument is not the last will and testament of said James Walker.

The facts stated in the petition are verified by the several affidavits of petitioners.

The executor, Nathaniel F. Walker, being served, appeared and showed for cause:

1st. Because the said will has been admitted to record in solemn form, and not in common form.

2d. Because it appears that parties having the same interest as the present movants, prosecuted a caveat against said

Walker vs. Perryman et al.

will, and solemn proceedings were had *per testes*, and it does not appear that they, the movants, had no actual knowledge of the proceedings, nor does it appear that they are not affected and precluded by notice of *ni pendens*.

3d. Because it does not appear by the affidavits of movants, that they had no knowledge of the probate of said will, or of the proceedings on the caveat filed to the same.

4th. Because it does not appear that they took no part in the proceedings had on said caveat.

5th. Because it does not appear that any disability hindered them from taking part in said proceedings.

6th. Because it does not appear that said will was proven and admitted to record in the common form.

7th. Because the parties movants make no sufficient affidavit to entitle them to said *rule nisi*, nor do they show that substantial justice requires that said will be again proven in solemn form, and a judgment can only be set aside for fraud or mistake.

8th. Because on the trial of the caveat before filed to said will, the executor represented all the parties in interest except the caveators.

And upon these grounds the executor moved to dismiss the petition, &c.

The movants joined issue upon the answer of defendant, and the same was tried on the appeal by a special jury.

The executor being the party called on, was, by the Court, ordered to open. He read the petition for the rule, and his answer thereto; and then offered in evidence the entire record of the proceedings on the caveat had before the Ordinary, and the record of the same cause on the appeal in the Superior Court.

He then introduced the following witnesses:

*John J. Grant* testified, that he knew Mary Perryman in her life time; She was the daughter of James Walker, deceased, and her children were Robert, Freeman, Mary B., who married Amos Ward, Elisha, Sarah Ann C., and Thom-

as Perryman. Mary Perryman died some year or two before her father, James Walker, who died in 1849. He did not remember to have seen movants in attendance upon the first probate of James Walker's will, and didn't remember to have heard the matter talked of before either of them. He thought Robert Perryman was at his father's, in Upson county, while the case was pending, and that he was from thirty-five to thirty-seven years old; Freeman Perryman was about thirty-four years old, and Mrs. Ward about twenty-seven, and they resided in Putnam county during the pendency of the litigation of the probate of James Walker's will, and resided apart from their father Elisha Perryman.

*Daniel Grant* confirmed the testimony of John J. Grant, as to Mary Perryman and her children; did not know that movants bore any part of the expense in caveat to James Walker's will, and did not know that they took any part in the trial during the pendency of the litigation. Robert Perryman, with his wife, called at his house in Upson county, on their way from Alabama to Putnam county; and did not know whether he lived then in Harris county or Alabama, but he lived in one of those places; and he did not remember that the subject of James Walker's will was talked of with Robert then or at any other time. He, witness, participated in the caveat, though he was not one of the caveators; paid part of the counsel fees, and consulted generally in the management and trial of the case, and never knew or heard of either of the movants taking any part in paying or engaging counsel, or advising or consulting in relation to the case. That Robert and Freeman Perryman, and Amos Ward and wife, lived separate from their father Elisha Perryman.

*James S. Walker* testified the same as John J. and Daniel Grant, about Mary Perryman and her children, except that he did not see Amos Ward to know him, till after the trial of the caveat to James Walker's will; and that he was actively engaged as a party in said caveat, and was present at the trial and during the litigation; unless he may have seen

Robert Perryman passing with his wife through Thomaston, he had no knowledge that any of the movants participated in any way in the litigation about James Walker's will; or had notice of it; witness is a cousin to the movants.

*William Taylor* testified, that he knew Robert Perryman, Freeman Perryman, and Amos Ward, and that in his belief they resided in Putnam county during the litigation growing out of the caveat to James Walker's will, and he believed it was in 1849 or 1850; and that he saw them at Upson Superior Court during the pendency of said litigation, and heard Robert Perryman say he had come to see about the probate of his grand-father's will; did not remember seeing movants in the Court, but he took or felt no interest in the trial.

Defendant then offered to prove that it was a fact well known and long understood in the family, that James Walker had made a will many years before his death; and further, that neither of the movants was then or had been present during this trial; and that parties who had before caveated the will, were the only parties present in the Court, assisting in the prosecution of this trial, and that they had employed counsel to manage said suit. The Court rejected the testimony, and counsel for defendant excepted.

Defendant then offered to prove by William A. Cobb, that the parties to the caveat in the former trial employed able and efficient counsel, and that said suit attracted considerable public notice. The Court repelled the testimony, and counsel for defendant excepted.

Defendant here closed.

The movants introduced no testimony.

In the argument to the jury, the counsel not agreeing as to whether the affidavits upon which the *rule nisi* was moved, were before the jury, the Court decided, and so stated, in the hearing of the jury, that the affidavits were a part of the pleadings in the cause, and the reading them to the

jury had  been waived, and they were before them as plead-
ings.    To this ruling defendant's counsel excepted.

After counsel  had  concluded  their  argument,  the  Court
charged the jury that Robert  and  Freeman  Perryman,  and
Amos Ward, and his wife, were not in privity with  the other
children of Mary Perryman, who were parties to  the  former
caveat; that  said movants  were not estopped  by reason of
the judgment rendered against the other heirs at law of James
Walker, upon the trial of the former caveat to said will.

The  Judge refused to charge, as  requested, that  in  order
to find for movants, it was  necessary for  them to show  that
substantial justice had not been done on the former  trial  of
the probate of said will.

The Court further held and instructed the  jury, that  the
movants were not subject to  the disabilities  of  legatees, be-
cause they had legacies in said will; that  they were heirs at
law of James Walker, and the rules and principles of law ap-
plicable to legatees of a will propounded for probate, did not
apply to them in this issue.

To which charge and refusal to charge, defendant's coun-
sel excepted.

The jury found for the movants, and defendant's  counsel
moved for a new trial, on the ground that the ruling, charges
and refusals to charge, before excepted to, were erroneous and
contrary to  law,  and  because the verdict of the  jury  was
contrary to law and evidence.

The Court refused to order a new  trial, and defendant ex-
cepted.

O. C. GIBSON and J. W. GREEN, for plaintiff in error.

LEVI SMITH and B. HILL, for defendants in error.

*By  the Court.*—LUMPKIN, J. delivering the opinion.

[1.]  Was the Court right in  holding, that the  fact that  a

portion of the heirs of Mary Perryman were parties to the first proceeding, for the probate of the will of their grand-father, did not preclude the rest, who were neither parties nor privies, from moving this second proceeding? We think so most clearly.

Each of these grand-children was entitled, in his own right, to his share of his ancestor's estate; and to contest any conflicting claim. They did not claim through one another. The interest of each was separate and independent. Therefore, a judgment against a part, did not prevent the rest from being heard. Suppose three of six heirs were to sue the administrator to recover their distributive share of the estate of their ancestor, and were to fail, would that prevent the remaining three from suing? Surely not. The cases are parallel. Neither were the movants represented by the executor in the prior proceedings. The executor is only the *legitimus contradictor* of the legatees, who take a beneficial interest under the will sought to be established. And although the heirs be named as legatees, still, if their interest as heirs be paramount to their interest as legatees, they cannot be said to be represented by the executor.

[2.] When application is made to the Court for a citation to issue, calling upon the executor, or the administrator with the will annexed, to prove the will in solemn form, the Court, upon the *ex parte* application, supported by affidavit, will enquire into the facts, and a *prima facie* case must be made, to the effect, that the movants were not heard in the first proceeding. And it is contended, that it must appear that substantial justice has not been done. And we admit that this doctrine is sustained by some of the precedents to be found in the *Ecclesiastical Reports*. But, we respectfully submit that this presumption, it would seem to us, would always arise in favor of an applicant who had not been heard. For, who shall undertake to bar rights, upon the assumption that substantial justice has been done him, when he has not been heard? An application of this sort may be assimilated to that for an

injunction in equity. The order will be granted, subject to be dissolved, upon the hearing. Is it not rather a preposterous idea, that a new trial should be asked, because, in the *preliminary* proceeding it was not alleged, that substantial justice had not been done, when upon the final trial upon the *merits,* the jury rendered a verdict for the *movants* ?

[3.] It is complained, that the Court refused to allow proof to be offered, to show that able counsel were engaged in resisting the first probate of the will, that many witnesses were sworn on the trial ; and that the case attracted much attention. Well, what of that?

[4.] Again, it is assigned as error, that the Court refused to permit one of the former caveators to testify that the parties to the present application had not given their personal attention to the case, but that the proceeding was conducted by the former movants, and counsel employed by them, and to prove, also, that for many years it was well known in his family, that James Walker had a will.

We are unable to perceive the relevancy of the latter testimony; and the former we hold to be entirely objectionable. It has been well characterized by counsel as an *ad captandum* movement, designed to prejudice the case, when no such effect should have been produced by it. I have brothers who have attempted to assert their rights, and have been defeated. Feeling that injustice has been done and the jury have so found the fact to be in this case, they instigate me to sue, and aid and abet me in doing so. Who shall condemn it ? Is it legally or morally wrong? If the opposite side supposed this to be a fictitious proceeding, and one not warranted by the movants, their counsel were in Court to be interrogated as to their employment. If Robert Perryman and his colleagues had no interest in the litigation, let the fact be established, and the suit could be arrested. It could not be defeated, however, by a side-wind.

[5.] As to the fifth ground in the motion for a new trial, we concur with the Circuit Court, that the affidavit was a

part of the pleading, and not in the proof of the case.   In either view of the subject, it was read to the jury; and that was enough.

Lastly, it is insisted, that the verdict was contrary to the evidence.

The testimony, it will be perceived, was apparently contradictory.   The weight of it was with the verdict.   At any rate, no fault can be found, that it was not fairly submitted under the charge of the Court.   Judge Cabiness instructed the jury, that "after the first proof of the will, the executor cannot legally be called on to bring his letters testamentary into Court, and re-prove the will, or, in other words, prove it in solemn form, unless the next of kin, who call for such proof, show that they were *ignorant* of the pendency of the proceedings had, when the will was proven in common form. And it is for you to determine, from the evidence before you in this case, whether such proof has been made.   And if it has not, then the movants have failed to show themselves within the rule which entitles them to call on the executor for the proof of the will in solemn form."

We are scarcely prepared to endorse fully and unqualifiedly the proposition, that a bare *knowledge* of the pendency of the first proceeding will operate as a bar in all cases.   It is not for the plaintiff in error, however, to complain of the latitude of the rule thus stated.

In conclusion, we earnestly invoke the consideration of the Legislature to this double probate of wills.   Why is this allowed ?   Why not pass a law making the first probate final ?   A statute which shall provide for the summoning of all the parties in interest, in the first instance, and prescribing the mode in which it shall be done ; personal service if within the State, and service by publication if living abroad.   The expense of attending the re-probate of wills, in Georgia, since I have been on the Bench, has cost the public more than its Supreme Court.   And this is not all.   A part of the heirs and legatees occupying the same status precisely

towards the litigation and its subject matter, fail, and a part recover! A mischief so patent, should not be tolerated. We disclaim all intention to reflect upon the past. As the law now stands, it was the privilege of parties to avail themselves of all their legal rights and remedies. We desire only to reform the evil in future.

Judgment affirmed.